[No. 27059. Department One. January 25, 1939.]

*In the Matter of the Estate of* PAUL MOLKE, *Deceased.* WILLIAM H. PEMBERTON, *as Supervisor of the State Inheritance Tax and Escheat Division, Appellant,* v. HENRIETTA GERTRUDE WENDT, *as Executrix, et al., Respondents.*[1]

[1]Reported in 86 P. (2d) 763.

*William H. Pemberton* and *Charles Snyder,* for appellant.

*W. G. Coleman, G. S. Bond, Judd D. Kimball,* and *John H. Bauer,* for respondents.

ROBINSON, J.—This action was instituted by the inheritance tax and escheat division of the state tax commission to impose and collect a tax with reference to certain transfers of real property purporting to have been made during the closing years of the nineteenth century.

Paul Molke died September 21, 1903. His nonintervention will was admitted to probate on November 23rd of that year. His estate, as inventoried by his executrix, consisted only of personal property, which was appraised at $343.10.

On September 1, 1937, the supervisor of the inheritance tax and escheat division filed "Findings fixing tax due." These were to the effect that certain real estate transfers, made by Molke in 1897 and 1898, were gifts intended to take effect in possession and enjoyment after his death; that the total value of the estate, subject to tax, was $3,658.10; and that the total tax due, calculated as per the retroactive provision of the 1935 act (Laws of 1935, p. 791, § 124, Rem. Rev. Stat. (Sup.), § 11211e [P. C. § 7030-184]), was $365.81, plus interest accrued since 1901, amounting to $995, or in all, $1,360.81, the payment of which it was sought to charge against the property.

The respondents, other than the executrix, are the present owners of the property. They appeared with the executrix and filed exceptions. The facts were,

for the most part, stipulated; and, upon trial of the issue, the lower court held that the personal property was subject to tax, but that the real property transfers were not. From a judgment entered in accordance with these findings, the supervisor appeals.

The stipulation shows that, on March 6, 1897, Molke deeded certain real property to Mary Elizabeth Carnes, subject to a condition that she should pay to the grantor during his lifetime the sum of thirty dollars per month. The instrument, which was recorded on March 6, 1897, is of great length, and contains, among others, the following provisions, which, as will be noted, due, apparently, to the omission of a word here and there, are not wholly intelligible:

"To have and to hold the said premises together with the appurtenances unto the said party of the second part and to her heirs and assigns forever, that by the terms hereof the said party of the second part shall be entitled to and have the free and uninterrupted possession of said premises from the date hereof, for the express purpose of receiving and collecting the rents, issues and profits of said premises, and for the general supervision over the same, but that during the life time of the said party of the first part the fee simple title in said premises shall be and remain in the said party of the first part which said title shall by virtue of these presents vest in said party of the second part immediately on the death of said party of the first part. But this instrument is made and executed upon the express provisions that the said party of the second part or any one shall not transfer shall convey or in any manner incumber or in any wise cause and transfer, sale conveyance or in incumbrance of any sort other than leases or the same upon said premises during the lifetime of the said party of the first part; and it is also made with the express understanding between said parties hereto that upon a failure of said party of the second part or her heirs to pay or cause to be paid the said thirty ($30.00) dollars per month as aforesaid or upon any violation

of the terms hereof by the said party of the second part or her heirs, then this instrument shall be and become void and the said party of the second part shall immediately forfeit all right or claim in and to said property and all thereof and shall forfeit all payments made to the said party of the first part, or his agent or attorney and all sums expended on said premises in the way of improvements or otherwise, and all improvements made thereon, and all right, or claim in and to the same shall revert to said party of the first part, or his agent or attorney shall have the right to re-enter and take possession of said premises and all thereof and oust and eject said party of the second part or her heirs therefrom or those holding under her or her heirs without notice. And it is further made a condition hereof that the rents and profits of said premises shall be first applied to the payment heretofore mentioned and then if any residue there be the same shall be retained by the said party of the second part and that the receiving and causing this instrument to be placed of record shall be construed as an acceptance by the said party of the second part of the foregoing grant subject to the restrictions herein mentioned and contained."

The stipulation further shows that, on March 8, 1898, Molke deeded to Benne Wendt certain real property, upon condition that the grantee should pay the grantor the sum of eight dollars per month during the grantor's life, and that the grantor should have the right to occupy a two-room cottage to be erected by him on the premises. This deed contained provisions very similar to those above quoted from the Carnes deed. It is stipulated that all of the covenants and conditions of both deeds were fully kept and performed by the respective grantees.

At the time these deeds were given, there was no inheritance tax law in effect in this state. Our first inheritance tax law was passed by the legislature of 1901, and is chapter 55, p. 67, of the laws of that ses-

sion.  Section 1 of that act, p. 67, reads, in part, as follows:

"All property within the jurisdiction of this state, and any interest therein, . . . which shall pass by will or by the statutes of inheritance of this or any other state, or by deed, grant, sale or gift made or intended to take effect in possession or in enjoyment after the death of the grantor or donor to any person in trust or otherwise, shall, for the use of the state, be subject to a tax. . . . "

Appellant listed the transfers as gifts "made or intended to take effect in possession or in enjoyment after the death of the grantor," within the meaning of the statute just quoted, and contends that they are, as such, subject to tax.  The respondents contend that the deeds were not intended to take effect in possession or in enjoyment after the death of the grantor, but transferred title with the right of immediate possession and enjoyment, subject only to the performance of conditions subsequent.  They further contend that, if the instruments were not instruments of immediate transfer, but only provided for transfers at death, they were contracts between the parties of a kind which could not be affected by retroactive legislation without impairing constitutional rights.

The following recital in the Carnes' deed—and there is a similar one in the other—at first sight seems to definitely settle the question in favor of the appellant:

". . . during the life time of the said party of the first part the fee simple title in said premises shall be and remain in the said party of the first part which said title shall by virtue of these presents vest in said party of the second part immediately on the death of said party of the first part."

Yet, the words of the granting clause recite that, in consideration of the payment of money, the receipt

of which is acknowledged, the first party has "granted, bargained, sold, and conveyed unto the said party of the second part, her heirs and assigns forever, . . ." Furthermore, the habendum clauses read:

"To have and to hold the said premises, together with the appurtenances, unto the said party of the second part and to her [his, in the Wendt deed] heirs and assigns forever, . . ."

Both instruments are signed, sealed, and acknowledged as deeds.

■ In construing a written instrument, it is the duty of the court to give effect to each and every part thereof, if that can be done. If there are flat contradictions in the text, then the alternative is either to hold that the intention of the maker cannot be determined or to select that one of the conflicting interpretations to which the instrument is susceptible which, upon a consideration of the whole matter, appears most likely to reflect the maker's intent.

■ In spite of the direct statement that fee simple title should remain in the grantor, we are of the opinion, from an examination of the instruments and the whole of each, that the grantor intended the possession and enjoyment of the property to vest immediately. In addition to the broad and sweeping granting and habendum clauses, each of the deeds expressly provided for the immediate, free, and uninterrupted possession of the grantee. The fact that it was provided in the Wendt deed that the grantee "shall not transfer, sell or convey the property," and, in the Carnes' deed, shall not transfer or convey it, would seem to indicate that the grantor thought that he had, on his part, given them instruments of present conveyance; and, throughout the instruments, the expression "this transfer" is frequently used. They speak also of the property "reverting," under certain cir-

cumstances, an expression that is only consistent with the passage of title; and it is said that, at the end of each instrument, a recording of the same shall be construed as an acceptance of the "grant."

Clearly, the instruments were not executed and delivered with the object of avoiding inheritance taxes, for, as has been pointed out, these transactions occurred four and three years, respectively, before our first inheritance tax statute was enacted.

From our analysis of the two instruments, coupled with the fact that the grantees immediately went into possession, which the grantor never in any way attempted to disturb, we are of the opinion that the grantor intended to make present transfers subject to defeasance by the failure of performance of conditions subsequent. The recital of reservation of title may, perhaps, be accounted for on the ground that the draftsman of the instruments—who is clearly shown by many indications therein to have been unskilled in such matters—probably thought it necessary to make such a reservation in order to secure the performance of the conditions.

Having reached the conclusion that the transfers were not made to take effect in possession or in enjoyment after the death of the grantor, it is unnecessary to discuss the constitutional question raised by the respondents.

The judgment appealed from is affirmed.

BLAKE, C. J., MAIN, BEALS, and STEINERT, JJ., concur.